LAWRENCE D. FANTI, *et al.*

*v.*

JAMES A. WELSH, *et al.*

(No. 12660)

Submitted September 12, 1967.      Decided June 4, 1968.

*Vernon E. Rankin, Louis A. Fatkin,* Westernport, Md., for appellants.

*Charles W. Smith, Jack I. Mullen,* Westernport, Md., for appellees.

234

CAPLAN, JUDGE:

In this civil action, instituted in the Circuit Court of Mineral County, the plaintiffs, Lawrence D. Fanti and Marjie J. Fanti, his wife, seek a judgment against the defendants, James A. Welsh and Nora E. Welsh, his wife, declaring that the plaintiffs have a right to continue to maintain a certain sewer under lands purchased by defendant James A. Welsh. They further seek injunctive relief to prevent the defendants from blocking or otherwise interfering with the use and enjoyment of the sewer.

Pursuant to Rule 53 of the Rules of Civil Procedure, this matter was referred to a commissioner before whom evidence was taken. Thereafter the commissioner reported to the court that in his opinion the plaintiffs had failed to establish a prescriptive right to said sewer line and recommended a denial of their claim. The court, upon further consideration, set aside the report of the commissioner and entered an order declaring that plaintiffs have a prescriptive right to the sewer line. It is from this order that the defendants prosecute this appeal.

The following factual situation, as it appears from the record, gives rise to this controversy. The plaintiffs own and reside in a house situate on West Fairview Street in the City of Piedmont, Mineral County, West Virginia. Plaintiff Lawrence D. Fanti was born in this house, it formerly having been owned by his father, Tony Fanti. The basement of this house is at a level lower than that of Fairview Street, making it impracticable to use the storm sewer in that street to service such house. Consequently, as related by plaintiff Lawrence D. Fanti, Tony Fanti in 1934 constructed a sewer line from the basement of said house across Fairview Street and down the bank in and under the property of The Baltimore and Ohio Railroad Company, such property now being owned by the defendants. Lawrence Fanti, then fourteen years of age, assisted his father in such construction.

Lawrence D. Fanti and other witnesses testified that the construction of this sewer line took approximately ten days; that work thereon continued around the clock, there

having been lights placed at the construction site at night; that the sewer was laid under Fairview Street, thereby interfering with the free flow of traffic; that during such construction, including that on the then railroad company property, passenger and freight agents of said railroad company were present in the performance of their regular duties; that no permission was obtained to construct the sewer line on the railroad property, although no objection was made to such construction; and that such sewer line has been in continuous and exclusive use by the plaintiffs and their predecessor in title since its construction.

By deed dated September 25, 1963, The Baltimore and Ohio Railroad Company conveyed to the defendant, James A. Welsh, a tract of land consisting of 1.41 acres. This tract consisted of the railroad station, including tracks, buildings and improvements, a part of which is the bank under which the subject sewer was laid. The habendum clause of this deed contains the following language: "TO HAVE AND TO HOLD the premises aforesaid * * * subject, however, to * * * all existing ways and servitudes, howsoever created."

James A. Welsh testified that the first time he learned of the sewer line was when this suit was instituted against him. He stated that he had the title "checked" by an attorney and that the report thereof did not show the existence of the subject sewer or any servitudes or ease-ment. No mention whatsoever was made of the sewer by any agent or representative of The Baltimore and Ohio Railroad Company at the time of the conveyance. Mr. Welsh went onto the land prior to his purchase thereof. His examination of such property failed to reveal any evidence indicating or suggesting to him the presence of the sewer.

Lawrence D. Fanti testified that after Mr. Welsh purchased this property, he had reason to believe that Mr. Welsh, in the conduct of his business, would destroy the sewer which his father had constructed. Taking the position that the habendum clause, the pertinent part of which is quoted

above, gave him the right to the continuous use and enjoyment of the sewer, the plaintiffs instituted this action. The plaintiffs contend that they have obtained an easement by prescription which cannot now be disturbed.

The defendants deny the plaintiffs' claim that they are entitled to the continued use of the property wherein the sewer line is located by reason of the plaintiffs' use thereof for a period in excess of thirty-three years.

Inasmuch as the plaintiffs readily admit that they do not have an easement in the subject property by grant, any right they may have to the continued use of the sewer line must be based upon an easement obtained by prescription. The requisites for obtaining an easement by prescription are well settled. *Monk* v. *Gillenwater*, 141 W. Va. 27, 87 S. E. 2d 537; *Holland* v. *Flanagan*, 139 W. Va. 884, 81 S. E. 2d 908; 14 M. J., Prescription, Sections 7-13; 28 C. J. S., Easements, Sections 10-16; 25 Am. Jur. 2d, Easements and Licenses, Sections 50-61. The absence of any one or all of such requisites will defeat a claim of a right to an easement by prescription. *Holland* v. *Flanagan*, 139 W. Va. 884, 81 S. E. 2d 908; see also, 28 C. J. S. Easements, Section 70b. The burden of proving an easement is on the party asserting a right thereto. 28 C. J. S., Easements, Section 68; 25 Am. Jur. 2d, Easements and Licenses, Section 118; *Eagle Lodge* v. *Hofmeyer*, 193 Va. 864, 71 S. E. 2d 195. One claiming an easement by prescription must establish his right thereto by "clear and convincing proof." *Beckley National Exchange Bank* v. *Lilly*, 116 W. Va. 608, 182 S. E. 767.

The commissioner, in accordance with the testimony of witnesses, held that the use by the plaintiffs and their predecessor in title has not been "a visible use"; that such use was visible, at most, only a few months after the sewer was constructed in 1934; "that the sewer line was not used with the knowledge and acquiescence of The Baltimore and Ohio Railroad Company"; and also that "Since this use of this sewer line was not open and public or notorious, there would be no presumption that it was a use made under a claim of right." The commissioner summarized

his findings in relation to the claim of an easement by prescription as follows: "Your commissioner therefore finds that an easement by prescription for the maintenance of a private sewer line across the defendants' land has not been proved by the plaintiffs, due to the plaintiffs' failure to establish by a preponderance of the evidence the requirements that the use be visible, under claim of right, and with the knowledge and acquiescence of the owner."

It is urged in behalf of the defendants that these findings of fact made by the commissioner are entitled to peculiar weight. Had the commissioner's findings been sustained by the trial court, the defendant's contention would be more forceful. *Baker* v. *Hamilton,* 144 W. Va. 575, 109 S. E. 2d 27. Rule 52 of the Rules of Civil Procedure contains the following language: "The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court." See also *Highland* v. *Ice,* 75 W. Va. 513, 84 S. E. 252; *Deepwater Railway Company* v. *Honaker,* 66 W. Va. 136, 66 S. E. 104; *State* v. *King,* 64 W. Va. 546, 63 S. E. 468; *Hyre* v. *Lambert,* 45 W. Va. 715, 31 S. E. 927; and *Roots* v. *Kilbreth,* 32 W. Va. 585, 9 S. E. 927.

In the instant case, however, the trial court did not adopt the findings of the commissioner but clearly disaffirmed them. In these circumstances an appellate court must make its determination from the record. As stated in Pt. 1 of the Syllabus of *Hyre* v. *Lambert,* 45 W. Va. 715, 31 S. E. 927, "Where questions of fact are referred to and passed upon by a commissioner, and the findings of the commissioner are overruled and disaffirmed by the circuit court, the appellate court must determine for itself, from the facts and circumstances disclosed by the record, whether it will sustain the conclusion of the commissioner or that of the circuit court."

From the findings and decision expressed by the trial judge, it is obvious that he relied, in a great measure, upon the existence of certain manholes on or near the defendants' property as disclosed by a view of the premises by the trial judge and also by an exhibit map which was apparently made by the mayor of the City of Piedmont. The map

indicates that there is or at least previously had been a sanitary or storm sewer line over a portion of the property purchased by the defendants from the railroad company. The trial court reasoned that these facts constituted a basis of notice to the railroad company and to the defendants of the plaintiffs' alleged prescriptive easement right. The trial court also apparently reasoned that, inasmuch as a map made by the mayor indicated the location of a sewer line over the defendants' land, there must have been available to them, and to their predecessor in title, information of this character in the municipal records. We are of the opinion that the trial court's judgment in this respect is clearly wrong. While the manholes and the exhibit map may have been reasonably sufficient to indicate that the defendants' land was burdened by a sewer line which was a part of the municipal storm and sanitary sewer system, particularly to accommodate the railroad company in its use of its property, we are of the opinion that these matters were insufficient, when considered in the light of the testimony, to establish notice to the railroad company or to the defendants of a claim of the plaintiffs of a prescriptive easement to maintain a private sewer line over the land in question for the benefit of the plaintiffs or of their property. Plaintiff Lawrence D. Fanti testified that to his knowledge the railroad company had no knowledge of the existence of his sewer line over the land in question.

The commissioner made an additional finding, which we consider sound, as follows: "Since it is stipulated that the existence of this sewer line could not be discovered by visual inspection of this property, and since there is no evidence that the defendants had actual or constructive notice of the existence of this sewer line, the easement, if one had even been established, would have been extinguished by the transfer of the servient estate from the Baltimore and Ohio Railroad Company to the defendants. 6 M. J., Easements, Section 22." In other words, even if it be conceded that the plaintiffs were entitled to a prescriptive right to a sewer easement over the property when it was owned by the railroad company, that right was

extinguished by the conveyance of the property to defendant James A. Welsh as a purchaser for value without actual or constructive notice of the plaintiffs' claim of an easement right.

6 M. J. Easements, Section 22, page 489, which was referred to by the commissioner in his report, is as follows: "Certain easements are of such a nature, that the use and enjoyment of them is obvious and apparent, for example, the right of drip, or surface drains, while the use and enjoyment of others are or may be hidden and invisible to the physical eye, such as underground drainage, or may be entirely consistent with the absence of all right to such use, as in the case of the easement of light, air, or prospect over a vacant lot. The last two classes of easements may readily escape the notice of a purchaser of the servient lot, and it would be an injustice to require him to admit such a burden, when he buys without notice thereof. Hence, it is a well-established principle governing the purchase of servient tenements that an easement therein is extinguished unless the purchaser has either actual notice of the existence of the easement, or constructive notice from the recordation of the express grant or reservation creating it, or from the fact that its use and enjoyment is open and visible." To the same effect see *Shaver* v. *Edgell,* 48 W. Va. 502, 37 S. E. 664; *Patton* v. *Quarrier, Trustee,* 18 W. Va. 447; *Ricks* v. *Scott,* 117 Va. 370, 84 S. E. 676; *Bowman* v. *Holland,* 116 Va. 805, 83 S. E. 393; *Deacons* v. *Doyle,* 75 Va. 258; *Scott* v. *Beutel,* 23 Gratt. 1; 1 Minor on Real Property (2d Ed., Ribble), Section 113; 28 C. J. S., Easements, Sections 47-50; 9 R. C. L., Easements, Section 61. "* * * The law imputes to a purchaser such knowledge as he would have acquired by the exercise of ordinary diligence. Thus, where the easement is open and visible, the purchaser of the servient tenement will be charged with notice, although the easement was created by a grant which was never recorded. There should be such a connection between the use and the thing as to suggest to the purchaser that the one estate is servient to the other. The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the

easement, or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry. It is not necessary that the easement be in constant and uninterrupted use. The purchaser of property may assume that no easements are attached to the property purchased which are not of record except those which are open and visible." 28 C. J. S., Easements, Section 49. To the same effect, see 25 Am. Jur. 2d, Easements and Licenses, Section 98; *Miller* v. *Skaggs,* 79 W. Va. 645, 91 S. E. 536.

During the taking of testimony before the commissioner, it was stipulated that, after the sewer was installed and covered, grass grew over the area of the previous excavation and that "there has been no visible indication of a sewer between the Fanti property and the manhole located on the former Baltimore and Ohio Railroad Company property now owned by the defendant, James A. Welsh." The testimony further indicates that there is nothing visible to indicate where the sewer line crosses Fairview Street from the Fanti property to the Welsh property. Lawrence D. Fanti testified that he never at any time erected any markers of any character to indicate the location of the sewer line on the property in question. Defendant James A. Welsh testified that a check of the title made by his attorney failed to disclose any servitudes or easements upon the property.

The deed made by the railroad company to James A. Welsh states that the grantor "does hereby covenant that it, its successors or assigns, will forever warrant and defend said premises and every part thereof unto Grantee, Grantee's heirs, personal representatives or assigns, against the lawful claims and demands of Grantor and all persons claiming or to claim by, through, or under it," subject to the language previously quoted from the habendum clause. Inasmuch as there was no record evidence of an easement in favor of the plaintiffs, and nothing on or about the land in question reasonably to suggest to James A. Welsh, as purchaser, the claim or existence of such a right in the plaintiffs, we are unable to perceive that any language of the deed, including the habendum clause, is of material significance in the decision of this case.

By way of summary, we are of the opinion that the commissioner correctly held that the plaintiffs failed to prove by a preponderance of the evidence that, for a period of ten years, the plaintiffs' use of the railroad property for maintenance of a sewer line for their benefit was visible, open and notorious under a claim of right and with the knowledge and acquiescence of the owner of the land; and that the commissioner also correctly held that James A. Welsh was a purchaser for value without actual or constructive notice and that, therefore, even if a prescriptive right to an easement had been acquired by the plaintiffs as against the railroad company as owner of the land, such right was extinguished and that Welsh, as a purchaser for value without notice, took the land free and clear of any such easement right.

For reasons stated in this opinion, the judgment of the Circuit Court of Mineral County is reversed.

*Reversed.*